# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Novartis and Par Antitrust Litigation** | **1:18-cv-04361-AKH** |
| **This Document Relates To:**<br><br>　All Actions | |

## MEMORANDUM OF LAW IN SUPPORT OF NOVARTIS'S MOTION TO COMPEL CAREMARK PHC, L.L.C.'S PRODUCTION OF DATA RESPONSIVE TO SUBPOENA

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii
I.      BACKGROUND ............................................................................................2
II.     LEGAL STANDARD......................................................................................5
III.    ARGUMENT ..................................................................................................6
IV.     CONCLUSION...............................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC)
(JLC), 2019 WL 3334503 (S.D.N.Y. July 25, 2019)................................................6

*Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294 (S.D.N.Y. 2012).....................................7

*Citizens Union of City of New York v. Attorney General of New York*, 269 F.
Supp. 3d 124 (S.D.N.Y. 2017)................................................5

*Conopco, Inc. v. Wein*, No. 05 Civ. 9899 (RCC)(THK), 2007 WL 1040676
(S.D.N.Y. Apr. 4, 2007)................................................7

*Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84
(E.D.N.Y. 1981)................................................7

*Haus v. City of New York*, No. 03 Civ. 4915 RWSMHD, 2006 WL 1148680
(S.D.N.Y. Apr. 24, 2006)................................................6

*In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655 (S.D.N.Y. 2018).......................2

*In re Salomon Bros. Treasury Litig.*, No. 91 Civ. 5471 (RPP), 1994 WL 62852
(S.D.N.Y. Feb. 22, 1994)................................................6

*United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97 (S.D.N.Y. 1979) ................................6

**Statutes & Rules**

FED. R. CIV. P. 26(b)(1) ................................................5

**Other Authorities**

CONG. BUDGET OFF., PRESCRIPTION DRUG PRICING IN THE PRIVATE SECTOR,
PAPER PUB. NO. 2703 10 (2007), *available at*
https://www.cbo.gov/sites/default/files/110th-congress-2007-2008/reports/01-
03-prescriptiondrug.pdf ................................................2, 3

The Novartis Defendants (Novartis Pharmaceuticals Corporation and Novartis AG) respectfully request that the Court compel Caremark PHC, L.L.C. ("Caremark") to produce data in response to Novartis's subpoena *duces tecum* served on October 8, 2019, which is highly relevant to assess Plaintiffs' claims in this litigation.  There is minimal burden to producing the data, and there is no asserted privilege with respect to it.  Caremark has nonetheless categorically refused to produce any of the requested data.

The "End-Payor Plaintiffs" ("EPPs") in this case represent a purported class of so-called "end-payors" that allegedly reimbursed pharmacies for their insureds' purchases of Novartis's anti-hypertensive medication Exforge and its generic equivalent, which was manufactured by Defendant Par Pharmaceutical, Inc. ("Par").  EPPs, who allege that they were forced to pay inflated prices for Exforge and its generic as a result of a license agreement between Novartis and Par, are indirect purchasers that are separated in the chain of pharmaceutical transactions from the Defendants and from the actual consumers of the medications by several steps:  EPPs claim to have paid some portion of the price of Exforge or generic Exforge when it was prescribed to their insureds, who purchased it from a pharmacy, which pharmacy was later paid, in part, by monies originating from EPPs.  This motion seeks the data relating to such transactions, which will help determine the prices that the members of the putative end-payor class actually paid for both Exforge and its generic, inclusive of any discounts or rebates provided to them by Caremark, and will be relevant to class certification and damages.

These data will also bear on the claims of the direct purchaser Plaintiffs, including the so-called Retailer Plaintiffs, which are pharmacies proceeding on their own behalf and as assignees of other direct purchasers.  Specifically, the data will shed light on these plaintiffs' damages, as the discounts pharmacies negotiated with Caremark bear on the price, quantity, and

timing of their purchase decisions.  Notably, among those Retailer Plaintiffs is CVS Pharmacy, Inc. ("CVS"), a corporate affiliate of Caremark.

Novartis has met and conferred numerous times with Caremark requesting that it provide this information.  Caremark has refused to produce **any** data, forcing Novartis to make this motion.[1]

## I.    BACKGROUND

Caremark is a pharmacy benefit manager (or "PBM"), which manages prescription medication benefits on behalf of insurers, health benefit funds and other third-party payors that are included in the putative class of end-payors in this case.  PBMs play a central role in pharmaceutical transactions, including by negotiating prices for medications on behalf of their end-payor clients with retailer pharmacies (which PBMs reimburse for prescribed medications) and pharmaceutical manufacturers.  In the course of those negotiations, PBMs often secure rebates and discounts on those prices, sometimes passing along the savings to their clients.  *See, e.g.*, *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 663 (S.D.N.Y. 2018).  As the Congressional Budget Office ("CBO") has explained, "PBMs play a key role in negotiating the final price that manufacturers and pharmacies receive on a prescription drug sale."  CONG. BUDGET OFF., PRESCRIPTION DRUG PRICING IN THE PRIVATE SECTOR, PAPER PUB. NO. 2703 10 (2007), *available at* https://www.cbo.gov/sites/default/files/110th-congress-2007-2008/reports/01-03-prescriptiondrug.pdf.  The CBO depicted PBMs' role in pharmaceutical transactions in the following diagram, annotated as relevant for the parties involved:

---

[1] Novartis files herewith the Declaration of Julie A. North ("North Decl.") and accompanying exhibits in support of this motion.



**Figure 4.**

**Flow of Funds for Single-Source Brand-Name Drugs Purchased at a Retail Pharmacy and Managed by a Pharmacy Benefit Manager for an Employer's Health Plan**

Source:    Congressional Budget Office.

Note:    AMP = average manufacturer price; WAC = wholesale acquisition cost; AWP = average wholesale price.

a.    The WAC is a list price that approximates what conventional pharmacies pay wholesalers for single-source brand-name drugs.

b.    Based on Novartis Pharmaceuticals Corporation, *Pharmacy Benefit Report: Facts & Figures* (2004), p. 16.

*Id.* PBMs thus maintain information that bears on the ultimate prices that, for example, an insurer member of the putative class in this case actually reimbursed for Exforge.

In order to determine the extent, if any, of end-payors' harm stemming from the license agreement between Novartis and Par, Defendants must be able to take discovery regarding the prices that members of the putative end-payor class paid for Exforge and its generic equivalent. With respect to EPPs that are named Plaintiffs, a subset of transaction data reflecting those prices can be obtained through party discovery; other transaction data, however, are within the possession of PBMs, including Caremark.  These data are also relevant to the claims of Retailer Plaintiffs such as CVS, Caremark's corporate affiliate, because they may reveal information about CVS's purchasing decisions.

3

Notably, Caremark cannot argue that it is a subpoenaed party with no connection to this litigation. Its affiliate, CVS, is a plaintiff in this litigation, and the transaction data Caremark has are relevant to that affiliate's alleged damages.

Novartis served a targeted subpoena on Caremark. Through this motion, Novartis seeks to compel production of data in response to just one request in that narrow subpoena:

- **Request No. 1:** Concerning Exforge and generic Exforge,[2] [Caremark's] transaction data, discount data, rebates received data, and rebates paid out data.[3]

  North Decl. Ex. A, Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action served upon Caremark, dated October 8, 2019, at 4-5.

Caremark initially objected in full to Request No. 1 on relevance, burden and confidentiality grounds. *See* North Decl. Ex. B, November 20, 2019 Letter from R. Kramer to J. Ritholtz and C. Kozikowski. After meeting and conferring multiple times, Caremark asked Novartis to explain in writing the relevance of the data, which Novartis did. *See* North Decl. Ex. C, December 17, 2019 Letter from J. Ritholtz to R. Davis. After several months of negotiations, Novartis ultimately indicated that it was willing to forego other requests in order to get data in response to Request No. 1. *See* North Decl. Ex. D, February 19, 2020 Letter from J. Ritholtz to R. Davis. When Novartis reached out to Caremark several more times to negotiate the scope of its data production, Caremark simply stopped responding. After several months of ignored

---

[2] Exforge is defined as "the product described in NDA. 21-990" and generic Exforge is defined as "any product that is AG-rated to Exforge by the United States Food and Drug Administration." North Decl. Ex. A at 2.

[3] *See* North Decl. Ex. A at 1-3. "Transaction data" concerns payments by Caremark to pharmacies and reimbursements from Caremark's clients; "discount data" concerns discounts received, as negotiated by Caremark with pharmacies; "rebates received data" concerns rebates received by Caremark from manufacturers; and "rebates paid out data" concerns rebates received by Caremark from manufacturers and passed through to its clients.

phone calls, emails, and letters,[4] Caremark finally advised that it would not produce any of the

subpoenaed data.  *See* North Decl. Ex. E, May 22, 2020 Letter from R. Kramer to J. Ritholtz.  In

that letter, in addition to its initial objections, Caremark made two new objections.  First, it

argued that the request for transaction data is premature because no class of end-payors has been

certified; second, it argued that the request is improper because the sought-after data are

available for purchase.  For the reasons explained below, these objections are baseless.

Caremark should therefore be compelled to produce data responsive to Request No. 1.

## II.   LEGAL STANDARD

"The discovery parameters set forth in Rule 26 also apply to subpoenas served upon

non-parties" like Caremark.  *Citizens Union of City of New York v. Attorney General of New*

*York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).  Novartis is thus entitled to discovery from

Caremark concerning "any non-privileged matter that is relevant to any party's claim or defense

and proportional to the needs of the case, considering the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit."  FED. R. CIV. P. 26(b)(1); *see*

*also* ECF No. 253 (ordering production of relevant third party documents).  Relevance is

"construed broadly to encompass any matter that bears on, or that reasonably could lead to other

---

[4] After months of back and forth, Novartis sent Caremark a letter on February 19, 2020 regarding the subpoena, asking for a response by February 28.  Caremark responded on February 28, advising Novartis that it hoped to reply early the following week.  Caremark did not reply the following week and on March 12, Caremark advised Novartis that it was still working on a response.  Novartis sent follow-up emails on March 19, March 30 and April 20, and left a voicemail with counsel on April 23, all to no response.  Novartis sent another follow-up email on May 20 advising Caremark that it was prepared to move to compel, and Caremark finally responded to Novartis's February 19 letter on May 22.

matters that could bear on any party's claim or defense." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC), 2019 WL 3334503, at *5 (S.D.N.Y. July 25, 2019).   Discovery is relevant when it is pertinent to "the appropriateness of class certification or to the merits of some of the claims in the case or to both."   *Haus v. City of New York*, No. 03 Civ. 4915 RWSMHD, 2006 WL 1148680, at *2 (S.D.N.Y. Apr. 24, 2006).

Furthermore, "a subpoena should not be quashed or modified where the court can devise an appropriate accommodation to protect the interests of the witness, such as a protective order or a confidentiality stipulation." *In re Salomon Bros. Treasury Litig.*, No. 91 Civ. 5471 (RPP), 1994 WL 62852, at *2 (S.D.N.Y. Feb. 22, 1994) (internal quotation marks omitted); *see also United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 99 n.6 (S.D.N.Y. 1979) (denying motion to quash subpoena in part because the existence of a protective order obviated confidentiality concerns).

## III.   ARGUMENT

As discussed above, Caremark has refused to produce the requested data on several grounds: relevance, confidentiality, burden, and on the grounds that the class has not yet been certified and Novartis could purchase these data from a commercial source.  As set forth below, none of these objections has merit.

The requested data are highly relevant.  Because PBMs like Caremark negotiate prices for their end-payor clients, the *actual* price that those end-payors pay—and here, purport to claim as damages—is ultimately reflected in PBM data.  Such data clearly implicate the EPPs' alleged damages.  And, the data is relevant to class certification issues because they may reveal instances in which members of the putative class may actually have paid ***less*** for Exforge than they would have paid absent the license agreement between Novartis and Par, and instances in which, due to rebate and discount guarantees made by Caremark to its clients, it was Caremark—and not the

6

end-payors—that may have borne the alleged overcharges for Exforge and its generic.  The data

is also relevant to claims of the Retailer Plaintiffs, such as Caremark's affiliate, CVS, which seek

millions of dollars in damages from the defendants for their purchases of Exforge and generic

Exforge.  The discounts that Caremark negotiated with pharmacies, including CVS, bear on

those pharmacies' purchase decisions.  Specifically, pharmacies' decisions as to how much

medication to buy, at what price, and when, are influenced by the arrangements they negotiate

with PBMs like Caremark.

That no class has been certified is inapposite to the relevance inquiry.  As discussed

above, the data responsive to Request No. 1 is relevant to whether the class can be certified at all.

Moreover, the discovery schedule in this case (ECF No. 243) provides that fact discovery will

close long before class certification is decided.  There is no basis to postpone discovery until the

class is certified.  *See, e.g., Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300

(S.D.N.Y. 2012) (ordering contemporaneous merits and class discovery prior to class

certification).  This is the only opportunity for Novartis to obtain this data, which it will use to

defend against Plaintiffs' claims for damages.

Nor can Caremark shirk its discovery obligations by simply claiming "confidentiality"

over the data.  *See* ECF Nos. 95, 198, 238, 248.  *See Conopco, Inc. v. Wein*, No. 05 Civ. 9899

(RCC)(THK), 2007 WL 1040676, at *5 (S.D.N.Y. Apr. 4, 2007) (a document's "confidentiality

does not shield it from discovery") (internal quotation marks omitted); *Grumman Aerospace

Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 87 (E.D.N.Y. 1981) (confidentiality alone

does "not immunize . . . materials from discovery").  Any confidentiality concerns are alleviated

by the several protective orders already entered in this case specifically at the request of

subpoenaed parties.  *See* ECF No. 248 (governing the production and handling of information

7

produced by another PBM); *see also* ECF No. 198 (governing the production and handling of information produced by third-party national wholesalers) and ECF No. 238 (governing the production and handling of certain highly confidential documents in the possession of PBMs).

Caremark has not identified any undue burden associated with producing these data. Nor could it—the data Novartis seeks are the sort of data routinely generated and stored in a PBM's ordinary course of business. Moreover, Novartis has already significantly limited the scope of the requested documents by narrowing the relevant time period and by foregoing its request for data related to drugs other than Exforge and generic Exforge.

Lastly, Caremark's argument that Novartis could purchase these data from other sources is incorrect. Such commercially available data only reflect aggregate quantities and dollar sales of Exforge and generic Exforge. They do not include the primary information Novartis seeks here—the amount Caremark paid to pharmacies and any discounts it negotiated with those pharmacies, rebates received by Caremark from manufacturers, and what portion of those discounts and rebates Caremark guaranteed to its clients.

## IV. CONCLUSION

Because the requested data are relevant both for purposes of class certification and for damages; because there is no undue burden or privilege issue; and because any confidentiality concerns are addressed by the protective orders already entered in this case, Novartis respectfully requests that this Court grant its motion to compel Caremark to produce the data requested in Request No. 1 in Novartis's subpoena.

July 20, 2020                              Respectfully submitted,

                                          CRAVATH, SWAINE & MOORE LLP,

                                              by
                                                   /s/ Julie A. North
                                                   Evan R. Chesler
                                                   Julie A. North

                                              Worldwide Plaza
                                              825 Eighth Avenue
                                              New York, NY 10019
                                              (212) 474-1000
                                              echesler@cravath.com
                                              jnorth@cravath.com

                                              *Attorneys for Defendants Novartis*
                                              *Pharmaceuticals Corporation and Novartis AG*